OPINION
{¶ 1} Defendant-appellant, Richard Newton Miracle, appeals his jury convictions for driving under the influence ("DUI") in violation of R.C. 4511.19(A)(1) and (4). We affirm.
 {¶ 2} On March 31, 2000, appellant was driving a motorcycle when the driver of another vehicle swerved into his lane, causing him to lose his balance, fall and wreck his motorcycle near the intersection of University and Roosevelt in Middletown, Ohio. Middletown City Police Officers Jeff Getter and Sergeant Steve Ezerski were dispatched to the scene at 2:03 p.m.
 {¶ 3} Upon arriving at the scene, Officer Getter noted that appellant was with emergency medical technicians ("EMT"). Officer Getter spoke with appellant for approximately 30 seconds while he was with the EMTs. He obtained basic information, which included appellant's name and social security number, for the accident report. The officers determined that appellant was not at fault.
 {¶ 4} After being approached by and speaking with the EMTs, Officer Getter went back to appellant to ask further questions. During this lengthier period of questioning, Officer Getter noted that appellant had glassy, bloodshot eyes, stumbled when stepping up onto the curb, and smelled of alcohol. Officer Getter believed that appellant was under the influence of alcohol. Sergeant Ezerski came over and spoke with appellant during the investigation and also noted that appellant had glassy, bloodshot eyes and smelled of alcohol.
 {¶ 5} While Officer Getter completed the accident report, Sergeant Ezerski asked appellant to submit to sobriety tests. Appellant agreed and then attempted to complete the count backward, one-legged stand, and walk and turn tests. Appellant could not count backwards from 30 when asked to count backwards, could not hold his leg up for longer than a few seconds on the one-legged stand test, and lost his balance during the walk and turn test.
 {¶ 6} After performing poorly on all three tests, Sergeant Ezerski placed appellant under arrest for driving a vehicle while under the influence of alcohol. He then placed appellant in the back of their police cruiser for transportation back to the police station.
 {¶ 7} Upon arriving at the police station, appellant was asked to submit a urine sample for analysis. After collecting the sample, Officer Getter sealed and marked the bottle, noting the time and date on the bottle. Appellant signed the bottle as well. Officer Getter then proceeded to place the sample in a refrigerator outside the police property room.
 {¶ 8} The next morning, the Middletown Police property officer retrieved appellant's urine sample from the refrigerator, logged it into the property room's computer, tagged it and placed it in a second refrigerator located inside the locked property room.
 {¶ 9} On April 19, 2000, the sample was removed and transported to the Miami Valley Regional Crime Laboratory where it was received and refrigerated by the laboratory on the same date.
 {¶ 10} On April 25, 2000, Heather Wogoman, a laboratory technician, analyzed the sample. She tested two portions of the sample and obtained results showing how many grams of alcohol per 100 milliliters of urine the sample contained. Wogoman reported a finding of 0.2703 grams of alcohol for the first test and 0.2679 grams of alcohol for the second test.
 {¶ 11} Appellant moved to suppress Wogoman's analysis of the urine test results. Appellant claimed that the police had neither reasonable grounds to detain him at the crash scene nor probable cause to arrest him. Appellant also claimed that because the urine sample had been improperly handled, the results were inadmissible and should be suppressed. The trial court denied appellant's motion and admitted the results of appellant's urinalysis at his jury trial.
 {¶ 12} During the trial, both parties stipulated that appellant had three prior DUI convictions. On May 9, 2001, a jury found appellant guilty on Count I for driving under the influence of alcohol and Count II for driving with a concentration of more than .14 of one gram or more by weight of alcohol per 100 milliliters of his urine. The trial court merged Count II into Count I, finding that Count II constituted the same offense. Appellant was then sentenced to serve six months in community corrections, pay a $10,000 fine, and submit to five years of community control. Further, the court ordered that appellant's driving privileges be suspended for appellant's natural life. Appellant raises five assignments of error.
Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS/DISMISS THE RESULTS OF THE URINE TEST."
 {¶ 14} Appellant contends that the urine test results should have been suppressed because the urine sample was not collected, preserved and stored properly. Appellant also maintains that the test was not completed within two hours of the violation.
 {¶ 15} When considering a motion to suppress, the trial court assumes the role of trier of fact as it is in the best position to resolve questions of fact and evaluate the credibility of witnesses.State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, a reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. However, an appellate court determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court erred in applying the substantive law to the facts of the case. State v. Vance (1994), 98 Ohio App.3d 56, 58 quotingState v. Williams (1993), 86 Ohio App.3d 37, 41.
 {¶ 16} A defendant's urine sample must be analyzed in accordance with the methods approved by the Ohio Department of Health. R.C.4511.19(D). As such, in regard to the collection and handling of urine specimens, the Ohio Department of Health has promulgated Ohio Adm. Code3701-53-05(F) which states that "while not in transit or under examination, all urine * * * specimens shall be refrigerated." Without a showing of prejudice to a defendant, the results of a urine test administered in substantial compliance with Ohio Adm. Code 3701-53-05 are admissible in a prosecution under R.C. 4511.19. State v. Plummer
(1986), 22 Ohio St.3d 292, at syllabus.
 {¶ 17} In the case sub judice, appellant contends that the urine sample should have been refrigerated at 42x Fahrenheit and that a preservative tablet should have been placed in the urine sample.
 {¶ 18} The current version of Ohio Adm. Code 3701-53-05, which was in effect at the time appellant was arrested, does not require a specific refrigeration temperature or that a preservative tablet be placed into a sample, collected and later delivered to a lab. The evidence shows that appellant's sample was continuously refrigerated according to the rules promulgated by the Ohio Department of Health from the time it was deposited into the container until it was analyzed in the crime laboratory. Thus, appellant's contention is unfounded.
 {¶ 19} Appellant further contends that the sample was not collected within the required two-hour time frame as delineated by R.C.4511.19(D)(1). The accident occurred at 2:03 p.m. and Officer Getter noted on the urine sample and the Administrative License Suspension[1]
("ALS") form that the sample was taken at 3:33 p.m. Officer Getter provided appellant with one of the copies of the form. Appellant's copy does not list the time that the urine test was administered. Appellant claims that this missing time on his copy warrants the suppression of the urine test.
 {¶ 20} However, the top copy of the ALS form did list the time. Also, the sample container lists the date and time. Appellant initialed the container after it was sealed. The sample, taken at 3:33 p.m., was taken approximately one hour and 30 minutes after the accident. Thus, it was taken within the mandatory two-hour time frame. The trial court properly overruled appellant's motion to suppress. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 {¶ 21} "THE COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS[.]"
 {¶ 22} Appellant asserts that the trial court erred in denying his motion to suppress and dismiss the case. Appellant argues that the officers not only lacked reasonable suspicion to stop appellant but also lacked probable cause to arrest appellant for DUI, which violated his Fourth Amendment rights. He further contends that the field sobriety tests were improperly administered and therefore the officers did not have probable cause to arrest him. Finally, appellant argues that he had the ineffective assistance of counsel because his counsel did not cite toState v. Homan, 89 Ohio St.3d 421, 2000-Ohio-212, when attempting to show that his field sobriety tests were improperly administered.
 {¶ 23} When considering a motion to suppress, the trial court assumes the role of trier of fact. State v. Mills (1992),62 Ohio St.3d 357, 366. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594. However, an appellate court determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court erred in applying the substantive law to the facts of the case. State v. Vance (1994),98 Ohio App.3d 56, 58, quoting State v. Williams (1993), 86 Ohio App.3d 37,41.
 {¶ 24} Appellant's assertion that the police stopped and detained him at the scene of the accident violating his Fourth Amendment rights is without merit. The officers arrived on the scene responding to a dispatch regarding an automobile accident in which appellant was involved. The officers have a duty and a need to investigate automobile accidents. See State v. McDonald (Apr. 24, 2001), Fairfield App. No. 2000-CA-51. Hence, the officers did not need reasonable, articulable suspicion to believe appellant had or was committing an offense to approach him while investigating the accident. Id.
 {¶ 25} The first time Officer Getter approached appellant, appellant was with the EMTs. Officer Getter only obtained general information from appellant within a 30-second period in order to complete the accident report. After an EMT broached Officer Getter, and the officer went to speak with appellant again, the officer noted that he had glassy, bloodshot eyes, smelled of alcohol and stumbled when trying to step up on the curb. At that point, the officers had reasonable suspicion to hold him for suspicion of operating his motorcycle while intoxicated. Appellant's contention that his Fourth Amendment rights were violated by the officers questioning him at the scene of the accident is unfounded.
 {¶ 26} Appellant also contends that the officers did not have probable cause to then arrest him. When determining whether the police had probable cause to arrest an individual for DUI, a court considers whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. State v. Homan, 89 Ohio St.3d at 427, citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225. In making this determination, a court reviews the totality of facts and circumstances surrounding the arrest. Id.
 {¶ 27} After Officer Getter and Sergeant Ezerski noted that appellant had bloodshot, glassy eyes, smelled of alcohol and that he was unsteady on his feet, they had reasonable suspicion to conduct a field sobriety test. See Columbus v. Anderson (1991), 74 Ohio App.3d 768,770.
 {¶ 28} Appellant contends that he was injured and could not properly perform the field sobriety tests. He was not wearing a helmet when he was involved in the accident. He claims that his leg was injured from the fall off the motorcycle. However, appellant told the EMTs not to take him to the hospital. When asked by Sergeant Ezerski, appellant told him of no medical reason why he could not perform the tests. Appellant also did not state while taking the tests that he could not perform them adequately because of his injuries.
 {¶ 29} Appellant performed poorly on all three field sobriety tests administered to him by Sergeant Ezerski. Appellant could not hold his leg up for longer than a few seconds on the one-legged stand test. He could not count backwards correctly from 30 on the count test. Finally, appellant could not complete the walk and turn test without stumbling. Looking at the totality of the facts and circumstances, we find the officers had probable cause to arrest appellant for driving under the influence.
 {¶ 30} Appellant further argues that the officers did not strictly comply with the guidelines set forth in the National Highway Traffic Safety Administration ("NHSTA") Student Manual in conducting the field sobriety tests. Appellant asserts that because he was injured, the tests would be invalid.
 {¶ 31} In order for results from the field sobriety tests to form part of probable cause for arrest, field sobriety tests must be conducted in strict compliance with standardized procedures. State v. Homan, 89 Ohio St.3d at paragraph one of the syllabus.
 {¶ 32} In the case sub judice, appellant never raised Sergeant Ezerski's noncompliance with the NHTSA manual procedures on conducting field sobriety tests at the trial court level. Furthermore, the manual was never introduced into evidence. We find appellant's assertion is without merit.
 {¶ 33} Finally, appellant contends that he had the ineffective assistance of counsel because his attorney did not cite to the Homan case when filing the motion to suppress. Appellant asserts that his counsel should cited Homan in order to argue that the officers did not strictly comply with the NHTSA manual in conducting the field sobriety tests.
 {¶ 34} Appellant must overcome the strong presumption that, under the circumstances, counsel rendered adequate assistance. State v. Smith
(1985), 17 Ohio St.3d 98, 100. To establish a claim for ineffective assistance of counsel, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064. Appellant shows prejudice by proving that there was a reasonable probability that, if not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 35} Appellant has failed to assert how the officers did not strictly comply with the NHTSA manual procedures. As such, appellant did not show that the result of his trial would have been different if this argument had been made during his trial. We find appellant has not proven that he was prejudiced by his trial counsel's performance. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 {¶ 36} "THE EVIDENCE WAS INSUFFICIENT TO CONVICT FOR § 4511.19."
 {¶ 37} Appellant argues that there was insufficient evidence to find that he was driving under the influence of alcohol under R.C.4511.19(A)(1) or that the concentration level in his urine was above .14 under R.C. 4511.19(A)(4). Hence, appellant believes that his convictions should be reversed.
 {¶ 38} When an appellate court reviews a claim that a conviction is not supported by sufficient evidence, its inquiry focuses primarily upon the adequacy of the evidence. State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52. "The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 39} The prosecution was required to prove that appellant operated his motorcycle in violation of R.C. 4511.19(A)(1). It states specifically, "No person shall operate any vehicle * * * within this state if * * * the person is under the influence of alcohol * * *." R.C.4511.19(A)(1). The prosecution does not have to establish a threshold level of alcohol concentration in appellant's body. State v. Lowman
(1992), 82 Ohio App.3d 831, 836. However, it must prove that appellant operated a vehicle when his faculties were appreciably impaired by the consumption of alcohol. Id.
 {¶ 40} In the case sub judice, Officer Getter testified that appellant smelled of alcohol, had glassy, bloodshot eyes, and stumbled when attempting to step up onto the curb at the accident scene. Sergeant Ezerski also testified that appellant smelled of alcohol and that he had glassy, bloodshot eyes. Appellant was given three field sobriety tests, all of which he performed poorly. Both officers opined that at the time of the accident, appellant was intoxicated. Finally, the two tests conducted on separate portions of the sample appellant submitted after the accident indicated a concentration of alcohol of .2703 and .2679. Therefore, there was sufficient evidence presented for the jury to infer that appellant was under the influence of alcohol while operating his motorcycle.
 {¶ 41} Appellant next asserts that the evidence is insufficient to establish the level of alcohol present in his urine at the time of the accident. However, evidence presented at trial showed that two samples of appellant's urine presented a .2703 and .2679 concentration of alcohol. Under R.C. 4511.19(A)(4),[2] the prosecution only has to show more than a .14 concentration of alcohol in appellant's urine. A showing of an excess concentration and compliance with the Ohio Department of Health Standards concerning these tests is a per se violation of R.C.4511.19(A)(4). State v. Rains (1999), 135 Ohio App.3d 547, 551-552.
 {¶ 42} The prosecution presented evidence that the proper procedure was used for acquiring the sample. Officer Getter testified that he used a brand new, clean bottle specifically used for urine collection when obtaining appellant's urine sample. There was evidence that the sample was constantly refrigerated according to Ohio Department of Health Standards. Finally, evidence was presented showing that the technician who tested the sample used the proper procedure. Therefore, the jury could find that appellant had more than a .14 concentration of alcohol in his urine. There was sufficient evidence for the jury to have found all of the essential elements of the offense beyond a reasonable doubt to convict appellant on both counts. Appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 {¶ 43} "THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 {¶ 44} Appellant asserts that his convictions for are against the manifest weight of the evidence. Specifically, he contends that other witnesses, before and at the scene of the accident, did not smell alcohol on appellant. Secondly, he contends that the urine analysis was conducted improperly.
 {¶ 45} The standard the court follows for determining whether a conviction is against the manifest weight of the evidence is summarized as:
 {¶ 46} "The court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 47} Appellant claims that his legs and arms were injured due to the accident. Furthermore, he maintains that he also sustained a head injury since he was not wearing a helmet. He asserts that his injuries caused him to perform poorly on the field sobriety tests.
 {¶ 48} Appellant's mother and two friends testified that they each spoke with appellant on different occasions from an hour and a half preceding the accident up until a few minutes before, and they did not smell alcohol on him or believe that he was intoxicated. Two witnesses at the scene of the accident also testified that they noted no odor of alcohol emanating from appellant. However, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 49} As stated earlier, the officers noted that appellant smelled of alcohol and that he had glassy, bloodshot eyes. Officer Getter witnessed appellant stumble on the curb. Moreover, both officers testified that they thought appellant was under the influence of alcohol.
 {¶ 50} Appellant signed a waiver at the scene of the accident stating that he did not want to be taken to the hospital. Before performing the field sobriety tests Sergeant Ezerski asked appellant if he was medically able to perform the tests. Sergeant Ezerski testified that he specifically asked:
 {¶ 51} "A. I have someone stand facing me — well, within earshot, where they can, uh, listen to my instructions. * * * I ask them if there's any, uh, physical problems that would create — or that would prevent them from performing the test. And then I ask them if they're clear on the instruction.
 {¶ 52} "Q. And did you do that with Mr. Miracle that day?
 {¶ 53} "A. Yes, I did.
 {¶ 54} "Q. And as far as — asked if he understood the test, did he respond to that question?
 {¶ 55} "A. Yes, he did.
 {¶ 56} "Q. And his response was what?
 {¶ 57} "A. He said he understood."
 {¶ 58} Furthermore, when Sergeant Ezerski was questioned later in the trial concerning appellant's medical condition, he specifically testified:
 {¶ 59} "Q. Did you ask Mr. Miracle about any medical problems?
 {¶ 60} "A. Yes.
 {¶ 61} "Q. What did you — how did he respond to the question?
 {¶ 62} "A. He stated he was okay."
 {¶ 63} Appellant never complained of an injury before or during the tests. As such, we find the jury had before it enough evidence to determine that appellant was impaired when he drove his motorcycle that afternoon.
 {¶ 64} Appellant further contends that his conviction for having a prohibited concentration of alcohol in his urine was against the manifest weight of the evidence.
 {¶ 65} Appellant presented the testimony of Larry Dehus, a forensic scientist and the prior lab supervisor of the Miami Valley Regional Crime Lab. He stated that a preservative tablet should have been used in order to keep bacteria from growing in the sample. Further, he testified that the refrigeration conditions used for appellant's sample were unknown. Finally, he stated that the time between the collection of the sample and the testing of the sample was too long. Dehus maintained that these issues could lead to fermentation of the sample and a higher alcohol concentration being shown.
 {¶ 66} As stated earlier, the prosecution presented evidence that the proper procedure was used for acquiring appellant's urine sample. Also, there was evidence that the sample was constantly refrigerated according to Ohio Department of Health Standards. The technician who tested the sample noted no abnormalities with the sample upon receipt. Finally, evidence was presented showing that the technician used the proper testing procedure.
 {¶ 67} The weight given to the evidence and the credibility of the testimony are primarily for the trier of facts. Id. Therefore, we find there was enough evidence presented for the jury to determine that appellant had more than a .14 concentration of alcohol in his urine. Accordingly, appellant's fourth assignment of error is overruled.
Assignment of Error No. 5:
 {¶ 68} "THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO QUESTION THE APPELLANT ON BAD ACTS OCCURRING AFTER THE ALLEGED OFFENSE."
 {¶ 69} Appellant contends that the trial court erred in allowing the prosecutor to cross-examine him on a pending alcohol-related disorderly conduct charge. Appellant maintains that he did not open the door to allow this evidence into the record.
 {¶ 70} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, at paragraph two of the syllabus. Absent an abuse of discretion and a showing that the accused has suffered material prejudice, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v. Martin (1985),19 Ohio St.3d 122, 129. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 158.
 {¶ 71} During appellant's direct examination testimony he stated the following:
 {¶ 72} "Q. All right. Had you had anything to drink that day?
 {¶ 73} "A. No sir. I had nothing to drink at all that day.
 {¶ 74} "Q. Had you had anything to drink the day before that?
 {¶ 75} "A. I do not drink since two years since —
 {¶ 76} "Q. All right.
 {¶ 77} "A. — my last DUI."
 {¶ 78} He then further testified:
 {¶ 79} "Q. All right. And have you been conscientious sir about maintaining your sobriety?
 {¶ 80} "A. Yes sir.
 {¶ 81} "Q. All right.
 {¶ 82} "A. It's the most important thing to me right now."
 {¶ 84} The prosecutor, maintained that appellant opened the door to questions concerning his assertion that he had nothing to drink in two years and that he had been conscientious about maintaining his sobriety. Thus, during his cross-examination, the prosecutor asked appellant whether he had maintained his sobriety subsequent to the accident. Appellant replied that after the accident he had a "relapse."
 {¶ 85} We find appellant's testimony was properly admitted under Evid.R. 608(B). As such, "[o]ther than the exception for certain criminal convictions, a witness' credibility may not be impeached by extrinsic proof of specific instances of his conduct. Such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid.R. 608(B)." State v. Kamel (1984),12 Ohio St.3d 306, paragraph two of the syllabus. Evid.R. 608(B) allows inquiry on cross-examination of specific instances of a witness' conduct to attack the witness' character for truthfulness or untruthfulness.
 {¶ 86} In the case sub judice, the prosecution never admitted the extrinsic evidence relating to appellant's later charge of disorderly conduct by intoxication. The prosecution instead questioned appellant as to the sincerity of the statement that he was "conscientious about maintaining his sobriety" and the truthfulness of the statement that he had not drank in two years since his last DUI. Appellant then admitted that he had "relapsed." No testimony or evidence was admitted at trial relating to appellant's arrest for disorderly conduct by intoxication. We find that this questioning was properly admitted by the trial court. Appellant's fifth assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] The ALS is a triplicate carbonless form that indicates appellant's willingness to take the urine test.
[2] {¶ a} R.C. 4511.19(A)(4) specifically states:
 {¶ b} "(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
 {¶ c} "(4) The person has a concentration of fourteen-hundredths of one gram or more but less than two hundred thirty-eight-thousandths of one gram by weight of alcohol per one hundred milliliters of the person's urine[.]"