OPINION
{¶ 1} Melissa A. Murray appeals from her conviction and sentence in the Fairborn Municipal Court following her no-contest plea to driving under the influence of alcohol in violation of R.C. § 4511.19(A)(1).
{¶ 2} Murray advances three assignments of error on appeal. First, she contends that the trial court erred by denying her motion to suppress field sobriety test results. Second, she argues that her motion to suppress should have been sustained because without the field sobriety test results no probable cause existed to arrest her for driving under the influence of alcohol. Third, she asserts that the trial court erred by not allowing cross examination concerning the arresting officer's knowledge of National Highway Traffic Safety Administration ("NHTSA") field sobriety testing standards.
{¶ 3} The facts underlying Murray's appeal were set forth in a pretrial suppression hearing held on October 2, 2001. A transcript of the hearing reveals that her appeal stems from events that occurred shortly after 1:00 a.m. on Saturday, June 16, 2001. (Tr. at 14). At that time, Ohio State Highway Patrol officer Lori Landacre observed Murray driving at a speed which the officer visually estimated to be well over the posted 60 mile-per-hour limit. (Id. at 12). Landacre then activated her radar and found that Murray was traveling 71 miles per hour. (Id. at 12-13). As a result, the officer stopped Murray for speeding. Upon approaching the stopped vehicle and speaking with Murray, Landacre smelled a "moderate odor of alcohol on her breath." (Id. at 13-14). Murray's eyes "were really glassy," and her speech was "slurred." (Id. at 14). She told the officer that she had consumed one beer. (Id. at 24).
{¶ 4} Based on the foregoing facts, Landacre suspected that Murray may have been impaired by alcohol. (Id. at 14-15). In order to determine whether Murray was capable of driving, the officer had her perform three standard field sobriety tests. (Id. at 15). In particular, Landacre conducted a horizontal gaze nystagmus ("HGN") test, a walk-and-turn test, and a one-leg-stand test. Landacre had been trained to perform the HGN test in compliance with NHTSA standards, and she performed Murray's HGN test in the manner in which she had been trained. (Id. at 15). Landacre also performed the walk-and-turn and one-leg-stand tests under NHTSA standards in the manner in which she had been trained. (Id. at 15, 17, 21). Murray scored "four points" on the HGN test. (Id. at 15). Based on that score alone, Landacre believed that there was a 77 percent chance that Murray's blood-alcohol content was above the .10 legal limit in Ohio. (Id. at 16). On the walk-and-turn test, Murray failed to perform as instructed. She never walked heel-to-toe, she started walking too soon, she lost her balance and stepped sideways, and she improperly turned 360 degrees rather than 180 degrees. (Id. at 19-21). On the one-leg-stand test, Murray also failed to perform as instructed. Several times she put her raised foot down and grabbed the officer's arm for balance. (Id. at 22). She also swayed and raised her arms to keep her balance. (Id. at 23). Following the field sobriety tests, Landacre told Murray that she had poor coordination and that she appeared to be under the influence of alcohol. (Id.). As a result, the officer placed Murray under arrest. (Id.). Murray subsequently refused to take a breath test to determine her blood-alcohol content.
{¶ 5} After being charged with driving under the influence of alcohol and speeding, Murray filed a motion to suppress all evidence or statements obtained as a result of the traffic stop and her subsequent arrest.[1] With Murray's written consent (Doc. #21), a magistrate conducted the October 2, 2001, suppression hearing. On October 9, 2001, the magistrate filed a written decision, finding in relevant part: (1) that officer Landacre had a reasonable, articulable basis to stop Murray for speeding, (2) that the officer had probable cause to make the subsequent arrest for driving under the influence of alcohol, and (3) that the three field sobriety tests were administered in strict compliance with NHTSA standards. (Doc. #22). On October 25, 2001, a municipal court judge adopted the magistrate's decision in its entirety. (Doc. #23). In so doing, the judge noted that neither party had filed objections to the magistrate's ruling. (Id.). Thereafter, Murray entered a no-contest plea to driving under the influence of alcohol in exchange for the dismissal of the speeding charge against her. On January 9, 2002, the trial court found her guilty of driving under the influence of alcohol and sentenced her to 180 days in jail with 160 days suspended. (Doc. #32, 35). The trial court also fined her $550 plus court costs, placed her on probation for two years, and suspended her driver's license for two years. (Id.). On January 22, 2002, Murray filed a timely notice of appeal, and the trial court stayed execution of her sentence pending the outcome of her appeal. (Doc. #35, 36).
{¶ 6} Before turning to Murray's assignments of error, we pause to address a threshold issue that has not been briefed by Murray or the state, which has elected not to favor us with a brief. In particular, we note that Murray's arguments on appeal all involve the denial of her motion to suppress. As set forth above, a magistrate overruled her motion, and a municipal court judge subsequently adopted the magistrate's decision after noting that neither party had filed objections. (Doc. #23). With consent of the parties and on proper referral, a magistrate may hear and decide any pretrial motion, including a motion to suppress, in a misdemeanor case for which imprisonment is possible. Crim.R. 19(C)(1)(f); State v. Weierman (Dec. 14, 2001), Montgomery App. No. 18853. In such a case, a magistrate is required to file a magistrate's decision, and any party may file timely objections. Crim.R. 19(E)(1) and (2). Furthermore, "[a] party shall not assign as error on appeal the court's adoption of the decision of the magistrate unless the party has timely objected to the magistrate's decision." Id. Similarly, Traf.R. 14(C) states that a court may refer contested cases to a magistrate for adjudication and written decision if the parties consent. Under Traf.R. 14, parties may file objections to a magistrate's decision pursuant to Civ.R. 53(E)(3), which provides, inter alia, that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
{¶ 7} In light of the foregoing provisions, Murray waived her ability to appeal the denial of her motion to suppress. As noted above, she did not file any objections to the magistrate's decision, which the municipal court judge subsequently adopted as her own. Given that she filed no objections, under either Crim.R. 19(E) or Traf.R. 14, as it incorporates Civ.R. 53(E)(3), Murray cannot now argue on appeal that the trial court erred in adopting the magistrate's decision and, in so doing, overruling her motion to suppress for lack of probable cause.State v. Givens (Sept. 1, 2000), Tuscarawas App. No. 1999AP110069. Despite Murray's failure to file any objections, we have reviewed the record for the presence of "plain error."
{¶ 8} Murray contends the trial court should have suppressed the field sobriety test results because the state failed to prove that Landacre performed the tests in strict compliance with NHTSA standards. This argument implicates State v. Homan, 89 Ohio St.3d 421,2000-Ohio-212, in which the Ohio Supreme Court held that for field sobriety test results to serve as evidence of probable cause to arrest, the police must have administered the tests in strict compliance with NHTSA standards.
{¶ 9} In State v. Rioux (Dec. 14, 2001), Greene App. No. 2001CA26, we set forth the proper analytical framework and allocation of the burden when a defendant alleges a lack of probable cause because field sobriety tests were not administered in strict compliance with NHTSA standards, as required by Homan:
{¶ 10} "A Crim.R. 12(C)(3) motion to suppress evidence is the proper vehicle to challenge the admissibility of evidence to prove an OMVI charge on a claim that it was not procured pursuant to applicable standards or regulations. Defiance v. Kretz (1990), 60 Ohio St.3d 1. However, the motion must put the court and the prosecutor on notice of the particular grounds involved. Xenia v. Wallace (1988),37 Ohio St.3d 216. The grounds need only be factually particular. SeeState v. Shindler (1994), 70 Ohio St.3d 54. In cases of warrantless arrests, once that standard is satisfied by the motion to suppress the burden shifts to the State to prove that the particular requirement was satisfied. Id. The State may meet its burden by offering general evidence. State v. Williams (Nov. 2, 2001), Champaign App. No. 2001CA8, unreported. If the movant challenges that evidence sufficiently, the State may then be required to present more particular evidence of compliance. Id."
{¶ 11} In other words, after a defendant notifies the state of the grounds for his suppression motion, "`[t]he state's burden of proof of going forward is not an onerous one. It is simply the same burden as under prior practice when the state went forward at trial. Thus, as inState v. Brown [(1975), 49 Ohio App.2d 104], general testimony that all pertinent rules and regulations had been followed in conducting the defendant's test, if unchallenged, would amount to a sufficient foundation for the admission of the results.'" Williams, supra, quoting Painter and Looker, Ohio Driving Under The Influence Law (2001 Ed.), T11.19. However, "a sufficient challenge to the State's general evidence then requires the State to present more particular evidence to prove compliance." Id.
{¶ 12} In the present case, Murray's counsel put the prosecutor on notice that she sought exclusion of her field sobriety tests on the basis that they were not performed in strict compliance with NHTSA standards. (Tr. at 6-7). As a result, the burden shifted to the state to prove strict compliance. On direct examination, the state met its burden through the testimony of Landacre, who explained generally that she had been trained to perform the HGN test, the walk-and-turn test, and the one-leg-stand test under NHTSA standards, and that she performed Murray's tests in the manner in which she had been trained. As noted above, such general testimony that pertinent regulations have been followed in conducting a test, if unchallenged, is a sufficient foundation for the admission of the test results. Williams, supra; Rioux, supra.
{¶ 13} On cross examination, defense counsel attempted to elicit testimony from Landacre concerning how field sobriety tests should be performed in order to comply with NHTSA standards. The prosecutor objected on the basis that defense counsel's line of questioning was overbroad. After engaging in considerable discussion with counsel, the magistrate ruled that Landacre would not be required to recite the NHTSA standards governing each test. Instead, the magistrate reasoned that defense counsel would be permitted to cross examine the officer on any particular NHTSA standard that defense counsel believed she failed to satisfy when conducting Murray's own tests. (Tr. at 53-60). Rather than reciting specific NHTSA testing standards and asking Landacre whether she had strictly complied with them, defense counsel expressed dismay at being placed in a "catch-22" and discontinued his questioning.[2]
{¶ 14} Given defense counsel's failure to identify any specific way that Landacre failed to comply with NHTSA standards in Murray's case, the officer's general testimony about her compliance with those standards was sufficient to satisfy Homan. See Williams, supra; Rioux, supra. Accordingly, the trial court did not commit plain error by refusing to suppress the field sobriety test results, which were obtained in strict compliance with NHTSA standards.
{¶ 15} In opposition to the foregoing conclusion, Murray argues that strict compliance was not shown because Landacre's video and audio equipment did not record the field sobriety tests and her memory of the tests was limited, forcing her to rely on her police report and a test sheet to refresh her recollection. Upon review, we find these arguments to be unpersuasive. Although the ability to review audio or video recordings of the field sobriety tests may have been helpful, Murray cites absolutely no authority for the proposition that strict compliance with NHTSA standards cannot be established without such evidence. In addition, the fact that Landacre needed to refresh her recollection with her police report and a test sheet is not particularly significant. Officers frequently refresh their recollection when testifying in traffic-offense cases, and we find nothing objectionable about Landacre having done so. Regardless of whether the officer testified from her independent recollection or after prompting from her notes and report, the fact remains that she adequately testified about Murray's performance on the field sobriety tests and her own compliance with NHTSA testing standards.
{¶ 16} Murray asserts that her motion to suppress should have been sustained because no probable cause existed to arrest her for driving under the influence of alcohol. Murray reasons that absent the field sobriety tests officer Landacre lacked probable cause to arrest her for driving under the influence of alcohol. In particular, Murray argues that her admission of drinking one beer, coupled with her speeding, odor of alcohol, slurred speech, and glassy eyes, was insufficient to establish probable cause. As set forth above, the trial court properly declined to suppress the evidence of her field sobriety tests. When the results of those tests are considered in conjunction with the other evidence cited above, Officer Landacre had ample probable cause to arrest Murray for driving under the influence of alcohol.
{¶ 17} Murray argues that the trial court erred by not allowing cross examination as to Landacre's knowledge of NHTSA field sobriety testing standards. As noted above, defense counsel attempted to elicit testimony from Landacre concerning how field sobriety tests should be performed in order to comply with NHTSA standards. (Tr. at 53-60). Defense counsel's questions were not addressed to Landacre's performance of the tests in Murray's particular case. Instead, defense counsel sought to inquire into the officer's understanding of NHTSA field sobriety testing standards generally. The prosecutor objected, arguing that defense counsel's questioning was overbroad. Ultimately, the magistrate ruled that Landacre would not be required to recite the NHTSA standards governing each test. Rather than requiring Landacre to recite every test requirement set forth in the NHTSA manual, the magistrate explained that defense counsel could question her about specific test requirements and whether she complied with them.
{¶ 18} Defense counsel argued that the foregoing procedure was unfair because Landacre had little independent recollection of how she conducted Murray's tests and had to refer to her notes and a test report to refresh her recollection. According to defense counsel, he could not reasonably inquire into what he believed Murray did wrong without first hearing her understanding of what the NHTSA testing manual requires. (Tr. at 55).
{¶ 19} Regardless of whether Landacre testified solely from independent memory or after refreshing her recollection, she did testify on direct examination about her administration of the field sobriety tests to Murray and about the fact that she performed those tests in compliance with NHTSA standards. We see no "plain error" present in the trial court's ruling that officer Landacre could not be required to testify to her understanding of the NHTSA standards since counsel could have cross-examined her with specific questions concerning her compliance with the NHTSA standards.
{¶ 20} The judgment of the trial court is affirmed.
GRADY, J., concurs.
[1] Murray also sought to prohibit the state from introducing at trial any evidence or testimony concerning her refusal to submit to a breath test. She has not raised this issue on appeal.
[2] We will address the magistrate's cross examination ruling again in our analysis of Murray's third assignment of error.