{¶ 21} Although I concur both in the judgment and in the opinion of this court in all other respects, I write to indicate that I disagree with the implication that the trial court did not err when it restricted Murray's cross-examination of Trooper Landacre.
{¶ 22} Pursuant to State v. Homan, 89 Ohio St.3d 421,2000-Ohio-212, the State bore the burden of establishing Trooper Landacre's strict compliance with all of the National Highway Traffic Safety Administration field sobriety testing standards as a condition of admitting any of those tests. Although I agree that the State could satisfy this burden through Trooper Landacre's testimony that she administered the tests in accordance with those standards, Murray was entitled to test the validity of this testimony through cross-examination.
{¶ 23} Trooper Landacre testified that the only recollection she had of the field sobriety testing involving Murray was an incident when Murray grabbed Landacre's arms for balance and "turn[ed] around 360." She had no specific recollection of how she administered the tests, but had testified, on direct, that she "perform[ed] the tests in the manner in which [she was] trained." She had also testified, on direct, that with respect to at least one of the tests, the horizontal gaze nystagmus test, she had "been trained to perform under NHSTA standards."
{¶ 24} In my view, Murray was not required to take for granted that the manner in which Landacre had been trained to administer the field sobriety tests was, in fact, in accordance with NHSTA standards, but was allowed to test that assertion with reasonable cross-examination. Landacre testified that she had no notes or other written aids to assist her when she performed field sobriety testing. Presumably, then, she relied upon her memory of her training to conduct field sobriety tests. In my view, it was proper for Murray to test Landacre's memory of her training with respect to each of the field sobriety tests she administered by asking her how she had been trained to perform the tests. Through cross-examination, Murray might show either that Landacre's memory of her training is not sufficiently reliable to assure that the tests were done properly, or that the manner in which she was trained to perform the tests (or her recollection of the manner in which she was trained to perform the tests, upon which she relied in administering the tests) does not conform to NHSTA standards.
{¶ 25} If, during cross-examination, Landacre forgot a step, that would not necessarily have been fatal to the State's position. On re-direct, the State could have established that Landacre just forgot a step, while on the less familiar ground of testifying in court, that she would not likely have forgot in the field, while in the familiar and routine business of administering field sobriety tests. Nevertheless, where the State relies for its proof upon testimony that the officer performed the tests in accordance with her training, and the further testimony that she was trained in accordance with NHSTA standards, the defendant may reasonably test the reliability of the testimony by inquiring how the officer was trained to perform the tests. This is especially critical where the officer, in administering the tests, relies solely upon her memory of her training. If an officer, in administering field sobriety tests, were instead to rely upon a set of laminated cards, like the Miranda warning cards that many officers carry, then the officer could testify that she performed each test in accordance with the instructions on the appropriate card, which she always carries with her, and her independent recollection of how she was trained to perform the tests would have little, if any, relevance.
{¶ 26} In my opinion, it was error not to permit Murray to inquire concerning Landacre's recollection of how she was trained to administer the field sobriety tests, which, according to her own testimony, governed how she in fact administered the tests. Nevertheless, I agree that this does not rise to the level of plain error. To rise to the level of plain error, an error must have a great likelihood of affecting the outcome. In my view, this error does not meet that test. There is nothing in the record to establish a great likelihood that the cross-examination that Murray sought, if it had been permitted, would have altered the outcome of this case. Consequently, the error did not survive Murray's failure to have objected to the magistrate's decision, and I agree that this assignment of error must be overruled.