OPINION
{¶ 1} Defendant-appellant Jeremy Shepherd appeals from his conviction and sentence, following a no-contest plea, for Driving Under the Influence. Shepherd contends that the trial court erred by denying his motion to suppress evidence. Shepherd contends that the stopping police officer lacked probable cause to administer field sobriety tests, that the field sobriety tests were not conducted in accordance with the National Highway Traffic Safety Administration Manual, and that his constitutional right to due process of law was violated when the police officer failed to videotape and audiotape the entirety of the encounter.
 {¶ 2} We conclude that the stopping police officer's observation of erratic driving, combined with Shepherd's slurred speech and the strong odor of alcohol, provided the officer with probable cause for the administration of field sobriety tests. We conclude that the officer's testimony supports the trial court's finding that those tests were administered in accordance with the National Highway Traffic Safety Administration Manual. Finally, we conclude that the constitutional right to due process of law does not require a police officer, in the investigation of a suspected criminal offense, to generate, or to collect, any particular type of evidence, at least in the absence of bad faith. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Ohio State Trooper Chad Miller was driving his patrol cruiser northbound on Route 68, north of Interstate 70, about 2:00 in the morning on January 22, 2002, when he noticed a Ford pick-up truck being driven by Shepherd. Shepherd's truck was ahead of Miller, in the right lane. Miller "observed the truck drive over the center line with its left side tires for a brief, brief time, then returned to its lane, but then drifted off the right side with both tires, return to its lane, and proceeded to drive back over the center line, again." Miller testified that: "After it returned to its lane, after the third time, I proceeded to follow the vehicle and observed it weaving back and forth within its lane."
 {¶ 4} Miller then stopped Shepherd. While Miller was conversing with Shepherd through the open truck door window, Miller "notice[d] that his speech on some of his words was slurred. And there was a strong odor of alcoholic beverage as I spoke to him." In response to Miller's question about having consumed alcohol, Shepherd said he had had one beer.
 {¶ 5} Miller then asked Shepherd to exit his truck and perform three field sobriety tests. These were a horizontal gaze nystagmus test, a walk-and-turn-test, and a one-leg stand test. Miller had Shepherd perform these tests at the rear of his patrol car. During the encounter, Miller activated the cruiser's video camera, which made a visual record of events in front of the cruiser. Miller did not turn the camera to point toward the rear of the cruiser, although there was some testimony that the video camera was capable of being turned.
 {¶ 6} Miller testified that he performed all of the field sobriety tests in accordance with the National Highway Traffic Safety Administration Manual. Based on Shepherd's performance on these tests, Miller concluded that he had probable cause to believe that Shepherd was under the influence of alcohol. Miller arrested Shepherd, and took him to a police station where a breath alcohol test was administered.
 {¶ 7} Shepherd was charged with Driving Under the Influence, under both R.C. 4511.19(A)(1) and (3), and with Failure to Remain in Marked Lanes. Shepherd moved to suppress the evidence, contending that Miller was without probable cause to require Shepherd to perform field sobriety tests, and that the tests were not performed in accordance with the National Highway Traffic Safety Administration Manual. Shepherd also contended, in connection with his motion to suppress, that Miller's failure to have recorded the entirety of the encounter with the video and audio recording equipment available to Miller, violated Shepherd's constitutional right to due process of law.
 {¶ 8} Following a hearing, the trial court denied Shepherd's motion to suppress. Thereafter, Shepherd pled no contest to Driving Under the Influence, in violation of R.C. 4511.19(A)(3), and the other charges were dismissed. Shepherd was found guilty, and was sentenced accordingly. From his conviction and sentence, Shepherd appeals.
 II {¶ 9} Shepherd's First Assignment of Error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED IN FINDING THAT THERE WAS REASONABLE ARTICULABLE SUSPICION TO STOP AND/OR DETAIN THE DEFENDANT/APPELLANT FOR POSSIBLE VIOLATION OF DRIVING UNDER THE INFLUENCE OF ALCOHOL, AND/OR LACK OF PROBABLE CAUSE TO ARREST THE DEFENDANT/APPELLANT FOR VIOLATION OF THE LAWS OF THE STATE OF OHIO."
 {¶ 11} We do not understand Shepherd to be challenging the propriety of Miller's having stopped him for the Marked Lanes violation. We understand Shepherd to be contending, in reliance upon State v.Spillers (March 24, 2000), Darke App. No. 1504, and other subsequent decisions of this court, that Miller was without probable cause to require Shepherd to perform field sobriety tests.
 {¶ 12} Cases involving this issue are notoriously fact-sensitive. In State v. Spillers, supra, we concluded that "nominal" traffic violations combined with a "slight" odor of alcohol, without more, were insufficient to justify the intrusion upon a motorist's protected liberty interests represented by the requirement that he perform field sobriety tests. We noted that the issue in that case was "close." In that case, the defendant had testified at the suppression hearing, and had denied that he had committed any traffic violations. The trial court, which granted the motion to suppress, did not resolve this conflict in testimony beyond noting that the traffic violations were "de minimus." In the case before us, Miller observed Shepherd cross over the center line twice, and the right side line once, after which Miller saw Shepherd "weaving back and forth within [his] lane." Miller also testified that there was no apparent cause for the erratic driving that he observed.
 {¶ 13} In our view, the combination of the erratic driving observed, together with Shepherd's slurred speech and the "strong" odor of alcohol, gave Miller the requisite probable cause to impose field sobriety tests upon Shepherd.
 {¶ 14} Shepherd contends that his slurred speech was not caused by the influence of alcohol, but is the result of a speech impediment. He also contended, at the oral argument of this case, that his erratic driving was the result of his attempting to insert a C.D. into his truck's C.D. player. We have examined the transcript of the suppression hearing, however, and there is nothing in that transcript to suggest that Shepherd provided these explanations to Miller at the time of the stop. Because the issue is whether Miller had probable cause to require Shepherd to submit to field sobriety testing, that issue must be based upon the facts and circumstances known to Miller. Facts and circumstances not known to Miller, while they might be relevant to the issue of Shepherd's guilt or innocence, are not relevant to the probable cause issue.
 {¶ 15} Shepherd next argues, in support of his First Assignment of Error, that the field sobriety tests should have been suppressed because they were not performed in accordance with the National Highway Traffic Safety Administration Manual. Shepherd cites State v. Homan,89 Ohio St.3d 421, 2000-Ohio-212, for that proposition.
 {¶ 16} We agree with Shepherd that field sobriety tests, to be admissible, must be performed in accordance with the National Highway Traffic Safety Administration Manual. Miller testified that he performed each of the tests in accordance with the Manual. By way of impeaching Miller's testimony, Shepherd alluded to another DUI case in which Miller was the arresting officer. In that case, State v. Mason (April 4, 2002), Clark Municipal Court No. 01-TRC 18558, the audio portion of a videotape record admitted in evidence in the trial established that the horizontal gaze nystagmus test performed by Miller in that case was of insufficient duration to constitute a proper test. For that reason, the trial court disregarded it.
 {¶ 17} Shepherd's use of State v. Mason, supra, to impeach Miller was proper, but the trial court, in the case before us, was not required to disbelieve Miller's testimony that he performed the test in this case in accordance with the Manual. We have reviewed the videotape received in evidence in this case, and there is nothing on that tape inconsistent with Miller's testimony that he performed the horizontal gaze nystagmus test in accordance with the Manual. That tape did not portray the administration of the horizontal gaze nystagmus test, which was performed at the rear of the cruiser, out of sight of the video camera, but the amount of time that passed between the time that Miller and Shepherd were visible in front of the cruiser and the time that they could later be heard within the cruiser is not inconsistent with Miller's testimony. Accordingly, the trial court was entitled to credit Miller's testimony, and find that the field sobriety tests were conducted in accordance with the National Highway Traffic Safety Administration Manual, as Miller testified.
 {¶ 18} Shepherd's First Assignment of Error is overruled.
 III {¶ 19} Shepherd's Second Assignment of Error is as follows:
 {¶ 20} "DEFENDANT/APPELLANT STATES THAT THE COURT ERRED IN NOT FINDING THAT HIS RIGHT TO DUE PROCESS WAS VIOLATED BASED ON THE FAILURE OF THE ARRESTING OFFICER TO HAVE VIDEOTAPED THE DRIVING OF THE DEFENDANT/APPELLANT, THE EVENTUAL STOP OF THE DEFENDANT/APPELLANT, AND THE FIELD SOBRIETY TESTS GIVEN TO THE DEFENDANT/APPELLANT, AS WELL AS THE AUDIO PORTION OF THE VIDEO TAPING WHICH DENIED THE TRIER OF THE FACT THE OPPORTUNITY TO SEE AND HEAR THE DEFENDANT/APPELLANT AT THE TIME OF HIS ARREST."
 {¶ 21} Miller testified that during his patrols he has a microphone on his person that normally is recorded on the videotape recording system in the cruiser, while that system is activated. He testified that this recording system failed, for some unknown reason, to work during his encounter with Shepherd.
 {¶ 22} There is also a microphone in the cruiser. Miller testified that he normally activates this microphone only when he and a suspect are in the cruiser, and there is some purpose for recording their conversation. Again, it should be noted that there is normally a microphone on Miller's person to record sounds in Miller's proximity, but that, for some unknown reason, it was not working that night. The only audio recording of Miller's interaction with Shepherd that evening was Miller's explanation to Shepherd of why he was being arrested, and the administration of Miranda warnings, after Miller placed Shepherd under arrest and put Shepherd in the back of his cruiser.
 {¶ 23} The field sobriety tests are neither observable nor audible on the videotape. The video camera continued to capture the scene in front of Miller's cruiser, with no sound. A procedure, OSP-103.22-01, promulgated by the Ohio State Patrol, was introduced into evidence at the trial. The purpose of that procedure is declared to be: "To establish guidelines for officers utilizing in-car videotaping equipment for the arrest of impaired driving (DUI) offenders in a manner that will gather evidence showing the driving, field sobriety testing, and arrest of the DUI suspect." That same procedure, at page two, provides that: "The location for field sobriety testing should be selected based on officers safety considerations. This may mean the tests are conducted in a location in which video is not possible. For example: It is fundamentally sound to conduct the tests to the right rear of the patrol car. The officer should be at a 45B angle facing the suspect in the suspect s vehicle.
 {¶ 24} Shepherd contends that his due process rights were violated by Miller s having failed to take steps to create a video and audio recording of the encounter, including, specifically, the field sobriety testing.
 {¶ 25} The State cites State v. Wooten (March 25, 2001), Athens App. No. 01CA31, for the proposition that the failure of a state trooper to take steps to capture the performance of field sobriety tests on videotape does not violate the defendant's constitutional right to due process of law under the Fourteenth Amendment to the United States Constitution. The Fourth District Court of Appeals held in that case that: "Because no constitutional violation arises merely from a law enforcement officer's failure to employ a particular investigative tool, the suppression of evidence or a dismissal of a charge is not warranted."
 {¶ 26} We note that in Arizona v. Youngblood (1988), 488 U.S. 51,109 S.Ct. 333, a case cited in State v. Wooten, supra, the United States Supreme Court rejected the argument that the Due Process Clause is violated when police fail to use a particular investigative tool. Significantly, the failure of the police in Arizona v. Youngblood,supra, was a failure to preserve evidence, rather than a failure to collect or generate evidence. Even where the police negligently fail to preserve evidence, in the absence of any suggestion of bad faith, there is no violation of the Due Process Clause. Id., at 488 U.S. 58.
 {¶ 27} We approve and follow State v. Wooten, supra. In the absence of bad faith, the failure of a police officer to cause a videotape or audiotape record to be made of that officer's encounter with a suspect does not violate the suspect's constitutional right to due process of law under the Fourteenth Amendment to the United States Constitution.
 {¶ 28} Shepherd's Second Assignment of Error is overruled.
 IV {¶ 29} Both of Shepherd's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and BROGAN. J., concur.