OPINION
{¶ 1} Joseph Rajchel is appealing the judgment of the Dayton Municipal Court, which found him guilty of driving under the influence.
 {¶ 2} On January 17, 2001, at approximately 8:43 p.m., Dayton Police Officer William Geiger observed Rajchel's vehicle and noticed that the front license plate was missing. Additionally, the officer observed Rajchel activate his left turn signal at an intersection but then continue straight as the officer approached. The officer then decided to initiate a traffic stop.
 {¶ 3} Upon making contact with Rajchel, Officer Geiger immediately noticed that Rajchel had a strong odor of an alcoholic beverage about his breath. Also, the officer noticed that Rajchel's eyes were glazed. The officer further noticed a number of empty beer cans located on the passenger side of the vehicle. Rajchel admitted to Officer Geiger that he had been drinking and volunteered to participate in a field sobriety test.
 {¶ 4} The officer conducted several field sobriety tests on a paved roadway, free from gravel, with only a slight grade. The first test the officer conducted was the balance test. The officer verbally explained the test and demonstrated to Rajchel how to perform it. The officer testified that Rajchel had swayed throughout the test and, in his opinion, had failed the test. Additionally, the officer administered the one-leg stand test. The officer testified that he verbally explained and physically demonstrated the test to Rajchel. Rajchel could only keep his foot in the air for four seconds rather than the requisite thirty seconds. Thus, the officer opined that Rajchel had failed this test as well. Next, the officer had Rajchel attempt the finger to nose test. Once again, the officer explained and physically demonstrated the test for Rajchel. During the test, Rajchel was unable to touch his nose with his right hand. In the officer's opinion, Rajchel also failed this test. The officer then administered to Rajchel the walk and turn test, which Rajchel passed. The officer then administered the alphabet test, which Rajchel also passed. Finally, the officer explained and administered the finger dexterity test. Rajchel was unable to satisfactorily perform this test.
 {¶ 5} In the officer's opinion, Rajchel's ability to drive was impaired, and he arrested Rajchel for driving under the influence. When questioned after proper Miranda warnings, Rajchel informed the officer that he had consumed two and a half Miller beers. The officer transported Rajchel to the jail and attempted to administer a breath test. However, Rajchel was unable to give a sufficient sample for the test. Therefore, Rajchel provided a urine sample that Officer Lawrence Daly collected at 10:28 p.m. Officer Geiger filled out the requisite information on the envelope containing the urine sample along with the corresponding property card while Officer Daly collected the sample. The vial used to collect the sample had a screw top lid, and Officer Geiger filled in Rajchel's name, the date, and the time that the sample was taken upon a label that was affixed to the vial containing the sample. After attaching the label, Officer Geiger placed a biohazard seal on top of the screw top lid. Officer Geiger then placed the vial into an envelope that he taped shut with evidence tape. The sealed envelope was then placed in the refrigerator in the jail. Officer Geiger further noted on the property card that the temperature in the refrigerator was 34 degrees.
 {¶ 6} At the hearing, Heather Wogoman, a forensic toxicologist from the Miami Valley Regional Crime Laboratory, testified. Wogoman testified that the original forensic toxicologist who had analyzed Rajchel's urine had been Jodi Fornsaglio. However, Fornsaglio had resigned her position and relocated to Pittsburgh, Pennsylvania. As a result of Fornsaglio's departure, Wogoman had been reassigned Rajchel's case.
 {¶ 7} Wogoman testified from Fornsaglio's note sheets. The notes indicated that the laboratory had received the urine sample on January 22, 2001. Fornsaglio indicated that the sample had been sealed and marked by the initials "MTC", which stood for Dayton Police Detective Mark T. Cordle. The notes further indicated that Fornsaglio had analyzed Rajchel's urine sample on January 23 and 24, 2001. Fornsaglio obtained a positive result from the urine, noting .20 grams of ethanol per one hundred milliliters of urine. When the testing was completed, a four-milliliter portion of the sample was taken and frozen. The stored sample was stored in a freezer in a secured room within the crime lab that has limited access. The frozen samples were stored in two two-milliliter vials with screw top lids. Rajchel's sample was marked with the case number it had been assigned by the crime laboratory.
 {¶ 8} When Wogoman was assigned the case, she removed a sample marked with Rajchel's case number from the freezer, noting that both vials were completely full and frozen. Wogoman tested a portion of the remaining urine sample and received the exact same results as Fornsaglio, specifically .20 grams of ethanol per one hundred milliliters of urine.
 {¶ 9} On January 17, 2001, Rajchel was cited for driving under the influence pursuant to R.C. 4511.19(A)(1) and R.C. 4511.19(A)(4). Moreover, Rajchel was cited for having only one license plate and for failing to wear a sear belt. Rajchel filed a motion to suppress and a hearing was held on March 1, 2001. On August 20, 2002, the trial court overruled Rajchel's motion to suppress.
 {¶ 10} On October 17, 2002, Rajchel entered a no contest plea to the charge of driving under the influence pursuant to R.C. 4511.19(A)(4), in exchange for the withdrawal of the remaining charges. Rajchel was sentenced to 180 days in the Montgomery County Jail and ordered to pay a $250.00 fine and court costs. The trial court suspended 177 days of the jail time, and Rajchel received unsupervised probation for one year. Also, Rajchel was ordered to attend a three-day alcohol intervention program at Wright State University. Rajchel has filed a timely appeal from this judgment.
 {¶ 11} Rajchel raises the following assignment of error:
 {¶ 12} "The trial court erred in overruling appellant's motion to suppress."
 {¶ 13} Rajchel argues that the trial court erred in overruling his motion to suppress because the field sobriety tests administered by the officer were not admissible, Rajchel's arrest was not based on probable cause, and Rajchel's urine specimen was not admissible due to a break in the chain of custody. We disagree.
 {¶ 14} Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress:
 {¶ 15} "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994), 93 Ohio App.3d 586,592.
Field Sobriety Tests and Probable Cause to Arrest
 {¶ 16} Rajchel argues that the field sobriety tests and his subsequent arrest should be suppressed because Officer Geiger did not properly administer the one-leg stand test, which was the only field sobriety test recognized by the National Highway Traffic Safety Administration ("NHTSA") that Rajchel failed. We disagree.
 {¶ 17} The Ohio Supreme Court has stated that "when field sobriety testing is conducted in a manner that departs from established manners and procedures, the results are inherently unreliable." State v. Homan,89 Ohio St.3d 421, 2000-Ohio-212. However, even if field sobriety tests are suppressed, the court may determine from the totality of circumstances that probable cause still existed for the arrest separate from the test results. Homan, supra at 427.
 {¶ 18} Rajchel argues that Officer Geiger did not strictly comply with the instructions mandated by NHTSA and that he did not recall if he demonstrated the test prior to having Rajchel perform the test. When describing his administration of the one-leg stand field sobriety test at the suppression hearing, Officer Geiger testified that he had told Rajchel, "I need you to stand with your arms at your side and raise whichever foot you prefer, approximately six inches off the ground and point your toe upward and then count * * *." The officer also instructed Rajchel to hold his raised leg for a thirty-second count, counting one thousand one, one thousand two, one thousand three, etc. In addition, Officer Geiger testified that he had physically demonstrated how the test should be performed. (Tr. 15). Finally, the officer asked Rajchel if he understood what he was required to do, and Rajchel indicated he understood. On cross examination, the officer was asked whether he had demonstrated to Rajchel how to stand while Rajchel had been listening to the instructions, and the officer responded that he did not recall. (Tr. 37).
 {¶ 19} In Rajchel's brief, he does not state with specificity how the officer failed to strictly comply with the NHTSA instructions for the one-leg stand test. We have reviewed the testimony from the motion to suppress hearing and do not agree that the officer failed to strictly comply with the NHTSA instructions on this test.
 {¶ 20} However, even if the one-leg stand test should have been suppressed, Officer Geiger still had probable cause to arrest Rajchel. In the instant case, Officer Geiger additionally performed three non-standardized field sobriety tests and another NHTSA field sobriety test. Although Rajchel passed the other NHTSA test and one of the non-standardized tests, Rajchel failed two of the non-standardized field sobriety tests. Additionally, Officer Geiger testified that he had smelled alcohol on Rajchel's breath and that Rajchel's eyes had been glazed. Moreover, Officer Geiger noticed open empty beer cans in Rajchel's vehicle within his reach, and Rajchel admitted that he had been drinking. After examining the evidence, we find that, considering the totality of the circumstances, Officer Geiger had sufficient probable cause to warrant Rajchel's arrest for driving under the influence. Thus, we do not agree with Appellant that the trial court should have suppressed his arrest for lack of probable cause.
Urine Sample
 {¶ 21} Rajchel argues that the trial court erred in failing to suppress the crime laboratory's results of the urine analysis because the State did not establish the chain of custody. The trial court has discretion in determining whether to admit evidence. State v. Harmon
(Mar. 2, 1993), Clark App. No. 2932. The State has the burden of establishing the chain of custody of a specific piece of evidence. Statev. Barzacchini (1994), 96 Ohio App.3d 440, 458. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(A). In order to meet its burden in establishing the chain of evidence, "the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur." State v.Qualls (June 6, 1997), Clark App. No. 96-CA-68. Breaks in the chain of custody go to the weight afforded the evidence — not the admissibility of the evidence. State v. Jones (Mar. 31, 2000), Miami App. No. 99 CA 38. If the state has demonstrated substantial compliance with the regulations, the burden shifts to the defendant to show how he was prejudiced by the state's failure to comply with the literal requirements of the regulations. State v. Plummer (1986),22 Ohio St.3d 292.
 {¶ 22} The pertinent Ohio Administrative Code required that urine containers be sealed in a manner such that tampering could be detected and have a label listing (1) the name of the suspect, (2) the date and time of collection, and (3) the name or initials of the person collecting the sample and/or the name or initials of the person sealing the sample. O.A.C. 3701-53-05(E). In this case, Officer Daly testified that he had personally obtained the urine sample from Rajchel, observing him urinate directly into the urine collection tube that the officer had held. Further, the officer testified that, once the sample had been obtained, he had screwed the lid onto the container. Moreover, Officer Geiger testified that, while in Officer Daly's presence, he had properly sealed the vial containing Rajchel's urine and had placed a biohazard seal on the vial. Additionally, Officer Geiger testified that he had marked the vial with his initials and labeled it with Rajchel's name and the date and time the sample had been taken.
 {¶ 23} In addition, Officer Geiger testified that he had placed the sealed vial into an envelope that had been marked with Rajchel's name, the date and time of the sample collection, and the officer's name. This envelope was then sealed with evidence tape, and a corresponding property tag was filled out containing Rajchel's name, the date and time of collection, and the officer's name. The sealed envelope was then placed in the refrigerator, and the temperature of the refrigerator was noted.
 {¶ 24} Forensic toxicologist Fornsaglio's notes indicated that Dayton Police Detective Mark Cordle had delivered the urine sample to the Miami Valley Regional Crime Laboratory on January 22, 2001, where it had been assigned to Fornsaglio and given case number 01-000999. The notes further indicated that the sample had been received sealed with a blue screw top lid and Rajchel's name on the vial. The notes made no indication that the sealed sample had been tampered with but did indicate that the vial was leaking. Fornsaglio tested the sample and found a urine ethanol level of .20 grams of ethanol per one hundred milliliters of urine. Fornsaglio then stored four milliliters of the sample in two two-milliliter vials with screw top lids that were then marked with the case number and stored in a freezer in a secure room at the lab.
 {¶ 25} Forensic toxicologist Wogoman took over the case when Fornsaglio left. Wogoman retrieved one of the two-milliliter vials marked with Rajchel's case number from the freezer and tested it. Wogoman received the same result as Fornsaglio, .20 grams of ethanol per one hundred milliliters of urine.
 {¶ 26} Rajchel argues that the results of the urine sample should be suppressed because no evidence was presented regarding how the urine sample was transferred from the jail to the crime lab. However, Fornsaglio's notes indicated that the sample had the initials of Detective Cordle as the individual who transferred the sample. More importantly, the sample arrived sealed and labeled with all relevant information. Rajchel argues that the sample may have been contaminated because Fornsaglio's notes indicated that the container had been leaking when it had arrived. However, the container still had the seal on it that would have prevented tampering. The mere fact that the container leaked does not indicate that it was tampered with or contaminated. The intact seal on the container combined with the container's proper labeling and the initials of the detective who transported the sample is sufficient evidence for the State to meet its burden of showing that it is reasonably certain that substitution, alteration, or tampering did not occur. The trial court did not err in failing to suppress the results of Rajchel's urine sample.
 {¶ 27} Rajchel's assignment of error is without merit and is overruled. The judgment of the trial court is affirmed.
FAIN, P.J. and GRADY, J., concur.