OPINION
{¶ 1} Appellant State of Ohio appeals the decision of the Fairfield County Municipal Court that granted Appellee Jodi DeLong's motion to suppress the results of field sobriety tests. The following facts give rise to this appeal.
 {¶ 2} On November 29, 2001, Trooper Lanning, from the Ohio State Highway Patrol, stopped appellee after observing her drive left of center twice on State Route 793 and twice on Stump Hollow Road. Trooper Lanning also observed appellee drive off the right side of Stump Road. Upon approaching appellee's vehicle, Trooper Lanning noticed appellee had red, glassy eyes. Trooper Lanning also smelled a strong odor of alcohol and marihuana emanating from appellee's vehicle.
 {¶ 3} Trooper Lanning placed appellee in his patrol car. Appellee informed Trooper Lanning that she had consumed approximately seven beers. Based upon his observations and appellee's admission, Trooper Lanning administered the horizontal gaze nystagmus test ("HGN"), preliminary breath test, one-leg stand test, walk-and-turn test, and the alphabet test. The test results indicated appellee was impaired. Trooper Lanning placed appellee under arrest for driving under the influence of alcohol and a marked lanes violation.
 {¶ 4} Subsequently, appellee filed a motion to suppress raising various issues including compliance with proper methods and procedures in conducting field sobriety tests. Following a hearing, the trial court granted appellee's motion, as it pertained to the field sobriety tests, pursuant to the Ohio Supreme Court's decision in State v. Homan,89 Ohio St.3d 421, 2000-Ohio-212.
 {¶ 5} The state timely filed its notice of appeal and sets forth the following assignment of error for our consideration:
 {¶ 6} "I. THE TRIAL COURT ERRED BY SUPPRESSING THE STANDARD FIELD SOBRIETY TESTS."
 I {¶ 7} The state maintains the trial court erred when it granted appellee's motion to suppress the results of the field sobriety tests administered by Trooper Lanning. We disagree.
 {¶ 8} There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; Statev. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37, overruled on other grounds.
 {¶ 9} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor
(1993), 85 Ohio App.3d 623.
 {¶ 10} On appeal, the state challenges the trial court's findings of fact. As stated earlier, in reviewing this type of challenge, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See Guysinger, supra. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. Thomas (1982),70 Ohio St.2d 79, syllabus. It is not an appellate court's function to substitute its judgment for that of the factfinder. State v. Jenks
(1981), 61 Ohio St.3d 259, 279.
 {¶ 11} Since we are not fact finders, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries
(Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some, competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279, syllabus. It is based upon this standard that we review the state's sole assignment of error.
 {¶ 12} The state maintains the trial court erred when it suppressed the field sobriety tests pursuant to the Homan decision. InHoman, an Ohio State Highway Patrolman stopped the vehicle driven by Defendant Homan after twice observing the vehicle travel left of center. Id. at 421. When the trooper approached the vehicle, he noticed a strong odor of alcohol on Homan's breath and found her eyes to be red and glassy. Id. The trooper subsequently administered field sobriety tests, including the HGN test, the walk-and-turn test, and the one-leg stand test. Id. at 421-422. Based upon Homan's performance of these tests, as well as her own admission she had consumed three beers, the trooper placed her under arrest. Id. at 422.
 {¶ 13} At trial, during cross-examination, the trooper testified he deviated from established testing procedures when he administered the HGN and walk-and-turn tests to defendant. Id. Prior to the commencement of trial, Homan filed a motion to suppress the results of the field sobriety tests, arguing the trooper did not administer the tests in strict compliance with standardized methods and procedures. Id. at 423. The trial court found the results of the field sobriety tests indicated sufficient impairment to support the trooper's finding of probable cause, despite the trooper's failure to strictly comply with established police procedures. Id. The matter proceeded to trial and Homan was found guilty of DUI. Id.
 {¶ 14} On appeal, the Sixth District Court of Appeals found the trial court improperly admitted the results of the field sobriety tests as evidence of probable cause to arrest. Id. The court of appeals held the tests could not form the basis for probable cause to arrest because the trooper did not strictly comply with standardized testing procedures in the administration of the tests. Id. Nonetheless, the court of appeals found there remained sufficient evidence upon which the trooper could have relied in arresting Homan even with the suppression of the field sobriety tests. Id.
 {¶ 15} Upon appeal to the Ohio Supreme Court, the Court held: "[i]n order for the results of field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id. at syllabus. However, even with the exclusion of the test results due to the trooper's lack of strict compliance, the Supreme Court, like the court of appeals, concluded the totality of facts and circumstances surrounding Homan's arrest supported a finding of probable cause. Id. at 427.
 {¶ 16} The state contends the trial court improperly interpreted "strict compliance" to mean literal compliance. The state maintains the "strict compliance" standard for field sobriety testing should take into consideration environmental conditions and human capabilities. In support of its argument, the state cites this court's recent decision inState v. Decker, Stark App. No. 2001CA00254, 2002-Ohio-1584. In Decker, the defendant filed a motion to suppress the results of field sobriety tests. Id. at 1. The trial court held a hearing to address defendant's motion and concluded the results of the HGN test should be excluded because the National Highway Traffic Administration Manual requires an officer to conduct the HGN test outside of the vehicle. Id. In reaching its decision, the trial court also relied on our decision in State v.Rader (June 25, 2001), Fairfield App. No. 00CA72, which dealt with the suppression of an HGN test.[1]
 {¶ 17} Defendant Decker appealed the trial court's decision to this court. We reviewed the trooper's testimony presented at the suppression hearing and found:
 {¶ 18} "Trooper Hromiak clearly and unambiguously testified he conducted the HGN test in accordance with his training and the National Highway Transportation Manual. Appellee [defendant] failed to offer evidence to the contrary. Because of this key distinction from Homan and Rader, we find the trial court improperly suppressed the evidence of the results of the HGN test." Id. at 3.
 {¶ 19} We find our decision in Decker distinguishable from the facts of the case sub judice and conclude the trial court properly suppressed the results of the field sobriety tests. The record indicates the first test administered by Trooper Lanning was the HGN test. On direct examination, Trooper Lanning testified that he was taught to administer the HGN test either standing or sitting pursuant to the National Traffic and Highway Administration Safety Manual. Tr. Suppression Hrng. at 12, 16. Trooper Lanning stated that he performed the HGN test pursuant to that manual. Id. at 17. On cross-examination, Trooper Lanning admitted that he did not first check the tracking of the eyes and then pupil size. Specifically, Trooper Lanning stated:
 {¶ 20} "Q. Would you agree with me that after reviewing these regulations that you're required to check for the tracking first and then check for the, whether the pupil sizes are equal?
 {¶ 21} "A. Yes.
 {¶ 22} "Q. So you're required to do these in a specific order?
 {¶ 23} "A. Right.
 {¶ 24} "Q. And you don't know which order you did them?
 {¶ 25} "A. I believe I did them pretty much together. You look at their eyes and if their pupils seem normal then you just proceed and you just . . .
 {¶ 26} "Q. But that's not what the regulations require. It requires you to check for tracking first, determine whether there's equal tracking and then determine the pupil size. It doesn't say (inaudible) together though.
 {¶ 27} "A. That's what the book says."
Tr. at 39-40.
 {¶ 28} The next test Trooper Lanning performed was the one-leg stand test. On cross-examination, Trooper Lanning conceded that he did not perform the test according to the training manual. First, Trooper Lanning had appellee perform the one-leg stand test even though appellee informed him that she had an injury to her left leg. Id. at 41. The training manual indicates that if there is any sort of an injury, the injury may affect the test results. Id. However, Trooper Lanning administered the test despite appellee's injury to her leg. Id. at 42.
 {¶ 29} The record indicates Trooper Lanning also did not follow the training manual as to the instructions for the one-leg stand test and timing of the test. Specifically, Trooper Lanning testified as follows:
 {¶ 30} "Q. * * * [O]ne of the testing regulations that, instructions according to the regulations is that you are required to ask the subject after telling her, `Do not perform the test until I tell you to do so.' You're required to tell them, `Do you understand the instructions so far?' Now when you were just, do you agree with that?
 {¶ 31} "A. Yes, sir.
 {¶ 32} "Q. Okay, And when you were just describing that to the judge that was not one of the things that you indicated that you did, is that right?
 {¶ 33} "A. I did not indicate that.
 {¶ 34} "Q. And another one of the testing requirements in the one-leg stand procedure is that the officer should always time the 30 seconds. Do you agree that that is one of the testing regulations?
 {¶ 35} "A. It should be a timed, timed test, yes.
 {¶ 36} "Q. And you did not time it for 30 seconds in terms of timing it either with a watch or methodically timing out a 30 second count, did you.?
 {¶ 37} "* * *
 {¶ 38} "A. Well, by her, by her counting 30 by one thousands that simulates 30 seconds for me.
 {¶ 39} "Q. But the testing regulations require the officer to always time 30 seconds, not the testing subject, isn't that, wouldn't you agree with that?
 {¶ 40} "A. Yes." Tr. at 45-47.
 {¶ 41} Finally, the last test the state alleges the trial court should not have been suppressed was the walk-and-turn test. Trooper Lanning concedes he did not administer this test according to his training manual. Defense counsel questioned Trooper Lanning as follows concerning the walk-and-turn test:
 {¶ 42} "Q. The regulations also require that the walk-and-turn test be done under dry conditions, wouldn't you agree as well?
 {¶ 43} "A. Yes.
 {¶ 44} "Q. And that certainly was not the case as well, was it?
 {¶ 45} "A. No, it was not.
 {¶ 46} "Q. You just said something, you said the regulations require an imaginary, either a line or an imaginary line?
 {¶ 47} "A. That's how I was trained, a line or an imaginary line.
 {¶ 48} "Q. Okay. I'll refer you to Section 8-21 of the NHTSA manual under Item No. IV. Would you review that and tell me if there's anything in there about using an imaginary line?
 {¶ 49} "A. Uh, there's nothing on this page in this book that says imaginary line.
 {¶ 50} "Q. In fact, it says a designated straight line, doesn't it?
 {¶ 51} "A. On that section, yes.
 {¶ 52} "Q. Is there some other section that says you can use an imaginary line?
 {¶ 53} "A. Uh, no, but I was trained on using an imaginary line or straight line and I believe there's, uh, a new book out that says imaginary line." Id. at 49-50.
 {¶ 54} Based upon the above testimony, we conclude Trooper Lanning conceded, on cross-examination, that he did not follow the training manual and implement the HGN test, one-leg stand test and walk-and-turn tests according to the manual. Further, the state failed to offer evidence to the contrary. Therefore, we conclude the trial court's decision to grant appellee's motion to suppress was not against the manifest weight of the evidence and was supported by some, competent, credible evidence.
 {¶ 55} Although the field sobriety tests must be suppressed for failure to strictly comply with standardized procedures, the totality of the facts and circumstances support a finding of probable cause to arrest appellee. The Ohio Supreme Court reached the same conclusion in Homan,supra, and stated:
 {¶ 56} "The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of strict compliance." Homan at 427.
 {¶ 57} In the case sub judice, prior to stopping appellee's vehicle, Trooper Lanning observed appellee fail to keep her vehicle within marked lanes of travel. Also, upon approaching appellee's vehicle, Trooper Lanning observed that appellee's eyes were red and glassy and a strong odor of alcohol and marihuana emanated from her vehicle. Finally, appellee admitted to consuming seven beers. Thus, even without the results of the field sobriety tests, Trooper Lanning had probable cause to arrest appellee for DUI. The trial court reached the same conclusion. Tr. at 62.
 {¶ 58} Further, although under Homan, supra, the results of the field sobriety tests are not admissible for purposes of determining probable cause to arrest, this does not mean the test results are also inadmissible at trial. Instead, we believe a distinction may be drawn between psychomotor field tests, which assess a defendant's ability to perform simple physical tasks and the HGN test, which results in scientific evidence of intoxication.
 {¶ 59} Due to the scientific nature of the HGN test, strict compliance with the testing regulations is a prerequisite to the admission of evidence concerning the results of this test. The HGN test is based upon a scientific theory outside the lay expertise of a jury. Therefore, the possibility of misleading the jury is great if improperly administered.
 {¶ 60} However, performance on psychomotor field sobriety tests fall within the juror's common knowledge of the indicators of sobriety or inebriation. The Supreme Court of Ohio has held that virtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated. City of Columbus v. Mullins (1954),162 Ohio St. 419, 421. Also, a police officer may provide lay testimony as to his or her opinion regarding a defendant's lack of sobriety. Statev. Holland (Dec. 17, 1999), Portage App. No. 98-P-0066, at 5. Therefore, a defendant's ability to perform psychomotor tests is within the juror's common knowledge and should be admitted into evidence provided their value is not outweighed by the danger of unfair prejudice. However, this testimony, once admitted into evidence, is subject to cross-examination and defense counsel may point out the inadequacies in the administration of the field sobriety tests.
 {¶ 61} The Lima Municipal Court adopted this approach in State v.Koepell (2002), 117 Ohio Misc.2d 17. The court interpreted Homan, supra, as allowing the trial court to separate unreliable test results from test performance, excluding both from the probable cause determination, but excluding only the test results at trial. We would note the Third District Court of Appeals declined to accept this approach in State v. Schmitt, Mercer App. No. 10-01-16, 2002-Ohio-4615. Instead, the Schmitt court concluded "* * * that where a recognized NHTSA field test is conducted in a manner that fails to comply with NHTSA standards, the reliability of the entire test process is called into question." Id. at 4.
 {¶ 62} However, we believe the approach adopted by us recognizes the trial court's broad discretion concerning what evidence to admit at trial. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Accordingly, based upon the above analysis, the results of the HGN test are not admissible at trial and Trooper Lanning may not testify regarding appellee's performance on the HGN test. Further, Trooper Lanning may not testify concerning the results of the psychomotor tests he administered to appellee. However, it is within the trial court's discretion whether to admit testimony regarding appellee's performance on the psychomotor tests.
 {¶ 63} The state's sole assignment of error is overruled.
 {¶ 64} For the foregoing reasons, the judgment of the Fairfield County Municipal Court, Fairfield County, Ohio, is hereby affirmed.
By: Wise, J., Farmer, P.J., and Boggins, J., concur.
Topic: Compliance procedures.
[1] In Rader, the arresting officer admitted, on cross-examination, he performed the test while the suspect was seated in the vehicle, despite the fact he was trained to perform the test outside the vehicle. We found, based upon the trooper's own admission, the trial court correctly suppressed the evidence of the HGN test.