OPINION
{¶ 1} Appellant James Kuhner appeals the decision of the Fairfield County Municipal Court that denied, in part, a motion to suppress certain evidence obtained following a traffic stop. The following facts give rise to this appeal.
 {¶ 2} On October 7, 2001, at approximately 2:30 a.m., Pickerington Police Officer Michael Morris stopped appellant's vehicle after appellant failed to stop his vehicle behind a stop bar at an intersection and failed to yield the right-of-way by turning in front of a vehicle. Upon approaching appellant's vehicle, Officer Morris noticed that appellant had glazed, bloodshot eyes, slurred speech and a strong odor of alcohol emanated from his vehicle. Officer Morris requested appellant to exit his vehicle so he could perform field sobriety tests. Prior to administering the tests, appellant informed Officer Morris that he had consumed a couple of Long Island Iced Teas.
 {¶ 3} Officer Morris had appellant perform the HGN test and walk-and-turn test. Appellant failed both tests. Officer Morris asked appellant to perform the one-leg stand test and appellant declined. Thereafter, Officer Morris placed appellant under arrest for driving under the influence of alcohol. Following his arrest, appellant informed Officer Morris that he usually only drinks beer. Officer Morris transported appellant to the Pickerington Police Department where he failed a breathalyzer test. Appellant was charged with driving under the influence and minor traffic offenses.
 {¶ 4} Subsequently, appellant filed a motion to suppress on the basis that Officer Morris lacked reasonable articulable suspicion to stop his vehicle, field sobriety tests were not conducted in strict compliance with standardized procedures, Officer Morris obtained statements in violation of his constitutional rights and the breath alcohol test was not conducted in substantial compliance with the requirements of the Ohio Administrative Code. The trial court conducted a hearing on appellant's motion. On March 28, 2002, the trial court issued a judgment entry overruling, in part, the motion to suppress. The trial court sustained the motion as it pertained to a statement appellant made to Officer Morris after his arrest.
 {¶ 5} On April 12, 2002, appellant entered a no contest plea to the charge of driving under the influence. The trial court sentenced appellant accordingly. Appellant timely appealed the trial court's decision concerning the motion to suppress and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. The trial court erred in overruling appellant's motion to suppress all testimony regarding chemical tests of appellant's blood alcohol level where the record fails to show substantial compliance with regulations promulgated by the Ohio Department of Health.
 {¶ 7} "II. The trial court erred in overruling appellant's motion to suppress the results of field sobriety testing that was not conducted in strict compliance with standardized procedures.
 {¶ 8} "III. The trial court committed reversible error by overruling appellant's motion to suppress evidence arising from a traffic stop that was not supported by reasonable articulable suspicion.
 {¶ 9} "IV. The trial court erred in overruling appellant's motion to suppress statements when the prosecution failed to establish that the arresting officer had fully provided the warnings required by Miranda v.Arizona."
"Standard of Review"
 {¶ 10} There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; Statev. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37, overruled on other grounds.
 {¶ 11} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any give case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor
(1993), 85 Ohio App.3d 623.
 {¶ 12} In the case sub judice, appellant's assignments of error challenge the trial court's findings of fact. Thus, we must determine whether the trial court's findings are against the manifest weight of the evidence.
 I {¶ 13} In his First Assignment of Error, appellant maintains the trial court erred when it denied his motion to suppress concerning chemical tests, of his blood alcohol level, where the record fails to show substantial compliance with regulations promulgated by the Ohio Department of Health. We disagree.
 {¶ 14} Under this assignment of error, appellant first argues the state failed to introduce into evidence a properly authenticated batch certificate that could serve as a basis for the calibration of the breathalyzer machine. In support of this argument, appellant cites our recent decision in State v. Musick, Licking App. No. 01 CA 77, 2002-Ohio-2890. In Musick, we referred to the case of State v. Brown
(Apr. 13, 1992), Clairmont App. No. CA91-07-043, at 4, which held:
 {¶ 15} "Authentication of a `batch' certificate is a condition precedent to its admission into evidence at a suppression hearing. Statev. Keating (Oct. 13, 1987), Stark App. No. CA-7148, unreported. Without a properly authenticated calibration certificate, the results of appellant's BAC verifier test cannot be admitted into evidence. City of Columbus v.Robbins (1989), 61 Ohio App.3d 324; see, also, State v. Ward (1984),15 Ohio St.3d 355. Finding that a properly authenticated calibration solution certificate was not offered into evidence by the state, would hold that the BAC verifier results must be excluded." Musick at 4.
 {¶ 16} We conclude the Musick case is distinguishable from the matter currently under consideration as the record indicates the state first introduced an uncertified copy of the batch certificate, however, the batch certificate subsequently admitted into evidence was properly certified. Since the certified batch certificate admitted into evidence was identical to the batch certificate initially presented at the suppression hearing, we conclude the state substantially complied with the Ohio Department of Health regulations.
 {¶ 17} Appellant next challenges the RFI calibration. O.A.C.3701-53-04(A)(2) sets forth the requirements for RFI checks of equipment and provides that:
 {¶ 18} "(2) The instrument shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced."
 {¶ 19} Appellant maintains the state failed to establish that Officer Simcox used a "hand-held radio" normally used by the law enforcement agency when conducting the RFI check. Appellant refers to Officer Simcox's testimony wherein he testified I "* * * [take] my radio handset, which is turned on, and then I click it to make sure that a radio frequency goes out on the machine." Tr. Suppression Hrng., Feb. 19, 2001, at 99.
 {¶ 20} In response, the state refers to Officer Simcox's testimony. Officer Simcox testified that the result of the RFI check was that it registered radio interference immediately when he hit his radio. Id. at 108. Further, the state refers to Exhibits 2, 3 and 4 which verify Officer Simcox's testimony regarding the RFI check. The record does not support the conclusion that Officer Simcox improperly conducted the RFI check by not using a "hand-held radio." Instead, we find substantial compliance with the Ohio Department of Health regulations.
 {¶ 21} In his final argument, under his First Assignment of Error, appellant contends the officers failed to observe him twenty minutes prior to the breathalyzer test. O.A.C. 3701-53-02(B) requires the subject to be observed "* * * for twenty minutes prior to testing to prevent oral intake of any material." Although Officer Morris testified that he observed appellant for twenty minutes prior to administering the breathalyzer test, appellant testified that when he arrived at the police station, he asked to use the restroom and before leaving the restroom, he placed a Hall's cough drop in his mouth. Tr. Suppression Hrng., Feb. 21, 2001, at 65.
 {¶ 22} During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. State v. Brooks,75 Ohio St.3d 148, 154, 1996-Ohio-134; State v. Mills (1992),62 Ohio St.3d 357, 366. In the case sub judice, the trial court believed the testimony of Officer Morris. Officer Morris testified that it is his normal practice to have the person open his or her mouth to make sure there is nothing in it. Tr. Suppression Hrng., Feb. 19, 2001, at 120. Officer Morris also testified that he checked appellant's mouth prior to the start of the observation period. Suppression Hrng, Feb. 21, 2002, at 117-118. Finally, Officer Morris testified that he did not smell the scent of a cough drop. Id. at 118.
 {¶ 23} We find the state substantially complied with the Ohio Department of Health regulations concerning the twenty-minute observation period. The trial court's conclusion that the state substantially complied with the Ohio Department of Health regulations is not against the manifest weight of the evidence.
 {¶ 24} Appellant's First Assignment of Error is overruled.
 II {¶ 25} In his Second Assignment of Error, appellant maintains the trial court erred when it denied his motion to suppress as it pertained to the field sobriety tests because they were not conducted in strict compliance with standardized procedures. We disagree.
 {¶ 26} In its judgment entry addressing appellant's motion to suppress, the trial court did not specifically address these issues as it concluded Officer Morris had probable cause to arrest appellant because he committed two driving infractions, had bloodshot eyes and an odor of alcohol on his person and admitted to consuming alcoholic beverages. Judgment Entry, Mar. 28, 2002, at 4. Although we ultimately agree with the trial court's conclusion, we will address appellant's arguments.
 {¶ 27} In support of this assignment of error, appellant cites the Ohio Supreme Court's recent decision in State v. Homan, 89 Ohio St.3d 421,2000-Ohio-212. . In Homan, an Ohio State Highway Patrolman stopped the vehicle driven by Defendant Homan after twice observing the vehicle travel left of center. Id. at 421. When the trooper approached the vehicle, he noticed a strong odor of alcohol on Homan's breath and found her eyes to be red and glassy. Id. The trooper subsequently administered field sobriety tests, including the HGN test, the walk-and-turn test, and the one-leg stand test. Id. at 421-422. Based upon Homan's performance of these tests, as well as her own admission she had consumed three beers, the trooper placed her under arrest. Id. at 422.
 {¶ 28} At trial, during cross-examination, the trooper testified he deviated from established testing procedures when he administered the HGN and walk-and-turn tests to defendant. Id. Prior to the commencement of trial, Homan filed a motion to suppress the results of the field sobriety tests, arguing the trooper did not administer the tests in strict compliance with standardized methods and procedures. Id. at 423. The trial court found the results of the field sobriety tests indicated sufficient impairment to support the trooper's finding of probable cause, despite the trooper's failure to strictly comply with established police procedures. Id. The matter proceeded to trial and Homan was found guilty of DUI. Id.
 {¶ 29} On appeal, the Sixth District Court of Appeals found the trial court improperly admitted the results of the field sobriety tests as evidence of probable cause to arrest. Id. The court of appeals held the tests could not form the basis for probable cause to arrest because the trooper did not strictly comply with standardized testing procedures in the administration of the tests. Id. Nonetheless, the court of appeals found there remained sufficient evidence upon which the trooper could have relied in arresting Homan even with the suppression of the field sobriety tests. Id.
 {¶ 30} Upon appeal to the Ohio Supreme Court, the Court held: "[i]n order for the results of field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id. at syllabus. However, even with the exclusion of the test results due to the trooper's lack of strict compliance, the Supreme Court, like the court of appeals, concluded the totality of facts and circumstances surrounding Homan's arrest supported a finding of probable cause. Id. at 427.
 {¶ 31} In the matter currently under consideration, appellant claims the officer failed to properly administer the HGN test and the walk-and-turn test. As to the HGN test, the NHTSA Manual requires the officer to first check the suspect's eyes to determine the ability to track together. Next, the officer must determine whether the suspect's eyes are able to pursue smoothly. After the officer has checked both eyes for lack of smooth pursuit, the officer is to check for distinct nystagmus at maximum deviation. However, in this case, Officer Morris testified that the first clue he looked for was nystagmus at maximum deviation. Officer Morris admitted that he did not look for clues in the order prescribed by the NHTSA. Tr. Suppression Hrng., Feb. 19, 2001, at 70-71, 72.
 {¶ 32} We recently addressed this issue in the case of State v.DeLong, Fairfield App. No. 02 CA 35, 2002-Ohio-5289. In DeLong, the State of Ohio appealed the decision of the trial court that suppressed the HGN test, one-leg stand test and walk-and-turn test on the basis that the state trooper failed to comply with proper methods and procedures when implementing the field sobriety tests. Id. at 1. On appeal to this court, we found the trial court properly suppressed the field sobriety tests for failure to strictly comply with standardized procedures, however, we also determined the totality of facts and circumstances supported a finding of probable cause to arrest the defendant. Id. at 5.
 {¶ 33} We further explained that:
 {¶ 34} "* * * [A]lthough under Homan, supra, the results of the field sobriety tests are not admissible for purposes of determining probable cause to arrest, this does not mean the test results are also inadmissible at trial. Instead, we believe a distinction may be drawn between psychomotor field tests, which assess a defendant's ability to perform simple physical tasks and the HGN test, which results in scientific evidence of intoxication.
 {¶ 35} "Due to the scientific nature of the HGN test, strict compliance with the testing regulations is a prerequisite to the admission of evidence concerning the results of this test. The HGN test is based upon a scientific theory outside the lay expertise of a jury. Therefore, the possibility of misleading the jury is great if improperly administered.
 {¶ 36} "However, performance on psychomotor field sobriety tests fall within the juror's common knowledge of the indicators of sobriety or inebriation. The Supreme Court of Ohio has held that virtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated. City of Columbus v. Mullins (1954),162 Ohio St. 419, 421. Also, a police officer may provide lay testimony as to his or her opinion regarding a defendant's lack of sobriety. Statev. Holland (Dec. 17, 1999), Portage App. No. 98-P-0066, at 5. Therefore, a defendant's ability to perform psychomotor tests is within the juror's common knowledge and should be admitted into evidence provided their value is not outweighed by the danger of unfair prejudice. However, this testimony, once admitted into evidence, is subject to cross-examination and defense counsel may point out the inadequacies in the administration of the field sobriety tests." Id. at 5-6.
 {¶ 37} Thus, we concluded, in DeLong, the results of the HGN test were not admissible and the state trooper was not permitted to testify regarding the defendant's performance on the HGN test. Id. at 6. However, if the trial court so permitted, the state trooper could testify concerning the defendant's performance on the psychomotor tests. Id.
 {¶ 38} With the above case law in mind, we now turn to the arguments appellant makes under this assignment of error. Appellant first challenges the trial court's decision not to suppress the HGN test results. Officer Morris admitted, at the suppression hearing, that he did not look for the clues in the order prescribed by the NHTSA Manual. Tr. Suppression Hrng., Feb. 19, 2001, at 70-71, 72. Based upon our decision in DeLong, we conclude the trial court should have suppressed the results of the HGN test. The results of the HGN test may not be considered for the probable cause determination and are not admissible at trial. Also, Officer Morris may not testify regarding appellant's performance on the HGN test.
 {¶ 39} Appellant also claims, under this assignment of error, the trial court should have suppressed the results of the walk-and-turn test because Officer Morris failed to advise appellant to watch his feet at all times while performing the test. In support of this argument, appellant cites the case of City of North Olmstead v. Benning, Cuyahoga App. Nos. 79548, 79561, 2002-Ohio-1553, which held:
 {¶ 40} "* * * according to the guidelines, the suspect was to watch her feet for the entire time that the walk-and-turn test was being performed. However, the officer involved failed to inform the appellant to do this. Therefore, in the absence of strict compliance, the results of the walk-and-turn test cannot be used to determine probable cause." Id. at 6.
 {¶ 41} We have reviewed the record in this matter and find Officer Morris testified regarding some of the instructions he gave appellant for the walk-and-turn test. Tr. Suppression Hrng., Feb. 19, 2001, at 74. Officer Morris also testified regarding an additional instruction he gave appellant prior to appellant performing the test. Id. at 75-76. However, the record is unclear whether Officer Morris informed appellant that he was to watch his feet the entire time he performed the test. Defense counsel never specifically asked Officer Morris this question. We will not assume Officer Morris failed to provide appellant with this particular instruction. The trial court properly denied appellant's motion to suppress as it pertains to the walk-and-turn test.
 {¶ 42} Accordingly, the trial court's decision not to suppress the HGN test is against the manifest weight of the evidence. However, we find, even with the exclusion of the HGN test, Officer Morris had probable cause to arrest appellant and therefore, the trial court committed harmless error when it denied appellant's motion as to the HGN test.
 {¶ 43} Appellant's Second Assignment of Error is overruled.
 III {¶ 44} Appellant contends, in his Third Assignment of Error, the trial court erred when it denied his motion to suppress concerning the initial stop of his vehicle because Officer Morris did not have a reasonable articulable suspicion upon which to base the stop. We disagree.
 {¶ 45} The standard for a de minimis vehicle stop does not require probable cause for arrest but the lesser standard of a reasonable and articulable suspicion of a criminal violation. This has been clearly stated in Terry v. Ohio (1968), 392 U.S. 1: "It is firmly established that the detention of an individual by a law enforcement officer must, at the very least, be justified by `specific and articulable facts' indicating that the detention was reasonable."
 {¶ 46} Based upon our review of the record, we find the trial court properly denied appellant's motion to suppress on the basis that Officer Morris did not have a reasonable articulable suspicion upon which to base the stop of appellant's vehicle. The stop and detention of appellant's vehicle was reasonable because Officer Morris initially observed appellant stop his vehicle, at a traffic signal, four feet beyond the "stop bar" at an intersection. When a vehicle opposing appellant's vehicle did not proceed for two or three seconds after receiving the green light, appellant proceeded to make a left turn. The driver of the oncoming vehicle proceeded with the green light but had to brake to avoid colliding with appellant's vehicle. We conclude these traffic violations provided Officer Morris with reasonable articulable suspicion to stop appellant's vehicle. The trial court's decision overruling appellant's motion to suppress concerning the stop of appellant's vehicle was not against the manifest weight of the evidence.
 {¶ 47} Appellant's Third Assignment of Error is overruled.
 IV {¶ 48} In his Fourth Assignment of Error, appellant maintains the trial court erred when it denied his motion to suppress certain statements he made as Officer Morris failed to provide him with Miranda warnings. We disagree.
 {¶ 49} The trial court in the instant action concluded appellant was not "in custody" for purposes of Miranda when he made two statements to Officer Morris, prior to being arrested, that he had a couple of drinks containing alcohol. Judgment Entry, Mar. 28, 2002, at 2. The trial court suppressed the second statement appellant made to Officer Morris that he usually drinks beer, as opposed to mixed drinks, as this statement was made after appellant's arrest, without the benefit of Miranda. Id.
 {¶ 50} For Miranda purposes, the trial court must determine whether there was a formal restraint or a restraint on movement associated with formal arrest. This decision depends upon the facts of each case. State v. Warrell (1987), 41 Ohio App.3d 286, 287, citingCalifornia v. Beheler (1983), 463 U.S. 1121, 1125. In making this determination, the trial court must determine how a reasonable person in the suspect's position would have understood his position. Id., citingBerkemer v. McCarty (1984), 468 U.S. 420.
 {¶ 51} The United States Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona (1966), 384 U.S. 436,444. The test to determine whether there is a sufficient restraint on freedom of movement is whether a reasonable person in the suspect's situation would understand that he was in a custodial situation.Berkemer, supra, at 422. The Berkemer court further found that persons detained pursuant to Terry stops are not "in custody" for Miranda purposes. Id. at 440.
 {¶ 52} In the case sub judice, we agree with the trial court's conclusion that appellant was not in custody when he made two statements, to Officer Morris, that he had a couple of drinks containing alcohol. At that point, appellant was not under arrest and was merely being detained pursuant to a Terry stop. The trial court's finding is not against the manifest weight of the evidence.
 {¶ 53} Appellant's Fourth Assignment of Error is overruled.
 {¶ 54} For the foregoing reasons, the judgment of the Fairfield County Municipal Court, Fairfield County, Ohio, is hereby affirmed.
By: Wise, J., Boggins, J., concurs.
Hoffman, P.J., concurs separately.
Topic: Suppression Issues in DUI Cases.